UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEGLIS YOHARDIS SALAZAR OSUNA,

Petitioner,

v.

LaDeon FRANCIS, Field Office Director of
Enforcement and Removal Operations, New York Field
Office, Immigration and Customs Enforcement; TODD
LYONS, Acting Director, U.S. Immigration and
Customs Enforcement; KRISTI NOEM, Secretary, U.S.
Department of Homeland Security; PAMELA BONDI,
U.S. Attorney General; and EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW,

Respondents.

No. 25-CV-9823

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Before the Court is a motion for attorneys' fees pursuant to the Equal Access to Justice Act

("EAJA") on a successful habeas petition challenging an immigration detention.  *See* 28 U.S.C.

§ 2412(d)(1)(A).  Petitioner Deglis Yohardis Salazar Osuna was detained by U.S. Immigration and

Customs Enforcement ("ICE"), which asserted that it was authorized to detain him, pursuant to 8

U.S.C. § 1225(b)(2)(A), during the pendency of his removal proceedings and without any

individualized determination as to why his parole should be revoked.  At the time Salazar Osuna

was detained, and the Government defended its decision to do so in this action, every court in this

District, including this one, along with nearly all of the district courts in the rest of the nation, had

rejected this novel interpretation of Section 1225.  Like the many courts before it, the Court granted

Salazar Osuna's habeas petition. It further determined that the Government's position was not

substantially justified, a predicate finding to a fee award under the EAJA.  The Government now

asks the Court to reconsider that determination.  Because the Government has not met its burden

of demonstrating that its position in this action was substantially justified, and because no special circumstances warrant denial of Salazar Osuna's fee application, the Court grants his motion.

## BACKGROUND

The Court assumes the parties' familiarity with this case, and sets forth here only those facts necessary to resolve the instant motion. Salazar Osuna, a tenth-grade student, entered the United States with his family in October 2022. Dkt. 1 ("Pet.") ¶¶ 1–2; Dkt. 9 ("So Decl.") ¶¶ 3–6. Shortly thereafter, after encountering ICE personnel, he was charged as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. So Decl. ¶ 6. Salazar Osuna and his family were then paroled into the United States. Pet. ¶ 2; So Decl. ¶ 6.

Salazar Osuna was detained on November 25, 2025, by ICE personnel after he attended a master calendar hearing before the New York Immigration Court, located at 26 Federal Plaza in Manhattan. Pet. ¶ 3; So Decl. ¶¶ 15–16. That same day, his next friend filed a petition for a writ of habeas corpus seeking his immediate release from custody, which the Government opposed.

The primary question raised by the petition—as in many recent cases in this District and the rest of the nation—was which of two provisions of the Immigration and Nationality Act ("INA") governed Salazar Osuna's detention: INA § 235(b)(2)(A), codified at 8 U.S.C. § 1225(b)(2)(A), pursuant to which a noncitizen's detention is mandatory during the pendency of removal proceedings, or INA § 236(a), codified at 8 U.S.C. § 1226(a), pursuant to which detention is discretionary. Prior to Salazar Osuna's case, this Court had held that Section 1226 governed the detention of aliens, such as Salazar Osuna, who are "noncitizen[s] already present in the United States" upon their detention, rather than "arriving alien[s]" or "applicant[s] seeking admission" to

2

the United States.  *Rivera Esperanza v. Francis*, 817 F. Supp. 3d 187, 195–96 (S.D.N.Y. 2025).[1]

As relevant here, an alien detained pursuant to Section 1226 has a right to "some process," such

as an individualized determination as to why their conditional parole should be revoked, under the

Fifth Amendment, and is also eligible for release on bond during the pendency of their removal

proceedings.  *Id.* at 198.  The Government, in its brief in opposition to Salazar Osuna's habeas

petition, stated that it "respectfully disagree[d] with the Court's decision in *Rivera Esperanza*," but

acknowledged that "the decision would control the result in this case . . . as the facts of this case

are materially indistinguishable."  Dkt. 8, at 3.  The Court agreed that *Rivera Esperanza* controlled

the instant case and held that because Section 1226 governed Salazar Osuna's arrest, and the

Government did not make any individualized determination prior to his detention, his due process

rights were violated.  *See* Dkt. 14 ("Op.") at 1–2.  It thus ordered his immediate release.  Dkt. 12.

Salazar Osuna now seeks an award of reasonable fees and costs pursuant to the EAJA.

Although Salazar Osuna initially filed his petition *pro se*, the Court appointed as *pro bono* counsel

Cleary Gottlieb Steen & Hamilton LLP.  Dkt. 5.  Among other things, the Cleary lawyers drafted

and filed Salazar Osuna's reply—the only counseled submission—and appeared on his behalf at

the hearing on the petition.  Salazar Osuna now argues that his counsel is entitled to $26,999.62

for the 102.75 hours of work they "reasonably expended" during their representation of him.  Dkt.

18 ("Pet. Br.") at 9–10.

## LEGAL STANDARD

"[U]nder the EAJA, eligibility for a fee award in any civil action" brought by or against

the United States "requires: (1) that the claimant be a prevailing party; (2) that the Government's

position was not substantially justified; and (3) that no special circumstances make an award

---

[1] Unless otherwise indicated, quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

unjust." *Gomez-Beleno v. Holder*, 644 F.3d 139, 144 (2d Cir. 2011) (quoting *Commissioner, INS v. Jean*, 496 U.S. 154, 158 (1990)); *see* 28 U.S.C. § 2412(d)(1)(A). "Civil actions" covered by the EAJA "include habeas petitions challenging immigration detentions," such as the instant case. *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 506 (S.D.N.Y. 2025); *see Vacchio v. Ashcroft*, 404 F.3d 663, 674 (2d Cir. 2005) (similar). Any fees awarded pursuant to the EAJA must be "reasonable." 28 U.S.C. § 2412(d)(2)(A).

"Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation." *Am. Hotel Int'l Grp. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 378 (S.D.N.Y. 2009). This doctrine, however, is "discretionary" and "does not limit a court's power to reconsider its own decisions prior to final judgment." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992), *cert. denied*, 506 U.S. 820 (1992). "The grounds, or special circumstances, upon which a court may reconsider an issue previously determined in an earlier stage of the same litigation are: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or to prevent manifest injustice." *Wash. Nat'l Life Ins. Co. of N.Y. v. Morgan Stanley & Co.*, 974 F. Supp. 214, 218–19 (S.D.N.Y. 1997); *see DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992) (similar); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.").

## DISCUSSION

### I.    Entitlement to Fees

In its December 15, 2025 Memorandum Opinion and Order, the Court determined that

Salazar Osuna was "the prevailing party in a civil action against the United States," and further found that "the Government's position was not substantially justified, since it does not, and has never had a reasonable basis in statutory text, structure, or history." Op. at 2 (quoting *Barco Mercado*, 811 F. Supp. 3d at 506). The Government now seeks reconsideration of the latter determination, arguing that its position was substantially justified given the "reasonable disagreement nationwide regarding the principal legal issue in this case," and that other "special circumstances" "render a fee award under the EAJA inappropriate." Dkt. 23 ("Gov. Opp'n") at 7, 10. Neither argument is availing. The Court thus holds that Salazar Osuna is entitled to a fee award under the EAJA.

### A.  Substantial Justification

The Court begins with the Government's application that it reconsider its previous determination that the Government's position was not substantially justified. The Government has the burden of proving its position was substantially justified, and "to meet that burden, it must make a strong showing that its action was justified to a degree that could satisfy a reasonable person." *Healey v. Leavitt*, 485 F.3d 63, 67 (2d Cir. 2007); *see Pierce v. Underwood*, 487 U.S. 552, 565 (1988). "The issue for EAJA purposes is not what the law is when the EAJA application is made, but rather whether the government was substantially justified in believing the law not to have foreclosed its position during the underlying litigation." *CFTC v. Dunn*, 169 F.3d 785, 787 (2d Cir. 1999), *cert. denied*, 528 U.S. 825 (1999); *see United States v. $19,047.00 in U.S. Currency*, 95 F.3d 248, 251 (2d Cir. 1996) ("The issue for EAJA purposes is whether the agency had a reasonable basis in fact or law to take the position that it did, at the time that it made its decision."). The Second Circuit has articulated several nonexhaustive factors to guide the reasonableness inquiry, including "the clarity of the governing law, the foreseeable length and complexity of the

litigation and the consistency of the government's position." *Dubose v. Pierce*, 761 F.2d 913, 918 (2d Cir. 1985), *vacated on other grounds*, 487 U.S. 1229 (1988); *see also FEC v. Political Contributions Data, Inc.*, 995 F.2d 383, 388 (2d Cir. 1993) (Jacobs, J., concurring in part and dissenting in part) (similar).

"The Government's position includes both the position taken by the United States in the civil action and the action or failure to act by the agency upon which the civil action is based." *Healey*, 485 F.3d at 67; *see* 28 U.S.C. § 2412(d)(2)(D); *see also Make Rd. N.Y. v. Blinken*, 2024 WL 4664712, at *8 (S.D.N.Y. Sept. 4, 2024) (noting that "the court makes one threshold determination for the entire civil action, treating the case as an inclusive whole"). Further, "it is well-established that the Government's prelitigation conduct or its litigation position could be sufficiently unreasonable by itself to render the entire Government position not substantially justified." *Healey*, 485 F.3d at 67. "The fact that the government's position in the case was not accepted by the court," though, "does not in and of itself dictate a finding, or even raise a presumption, that the government's position was not substantially justified." *Hubbard v. Comm'r of Soc. Sec.*, 2022 WL 11266612, at *3 (S.D.N.Y. Oct. 19, 2022); *see also Scarborough v. Principi*, 541 U.S. 401, 415 (2004) (noting that there is no "assumption that the Government must pay fees each time it loses"); *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1173 (D.C. Cir. 2005) (stating that, in this analysis, "courts need to guard against being subtly influenced by the familiar shortcomings of hindsight judgment"). By contrast, "a string of losses," while "not determinative," "can be indicative that an agency's position lacks substantial justification." *Contractor's Sand & Gravel, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 199 F.3d 1335, 1341 (D.C. Cir. 2000); *see also Pierce*, 487 U.S. at 569 (similar); *Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 563 (6th Cir. 2021) (similar, but noting that "it is the actual merits of the Government's litigating position that matter

6

most"). At bottom, "[t]he test is essentially one of reasonableness." *Political Contributions Data*, 995 F.2d at 386.

The Government argues that its position in this case was substantially justified because the same or similar legal arguments have since "been accepted by two U.S. Courts of Appeals, the Board of Immigration Appeals, and a minority of district courts." Gov. Opp'n at 8. This "split in federal courts as to the validity of ICE's statutorily grounded application of § 1225(b)(2)(A)," it urges, "demonstrates that reasonable minds can differ on Respondent's position." *Id.* The Court disagrees.

It is true, as the Government asserts, that "a split in the federal district and Circuit courts" is probative of whether "reasonable minds could . . . reach different conclusions on [a] legal issue," and thus whether the Government's position was substantially justified. *Garner v. Comm'r of Soc. Sec. Admin.*, 2022 WL 22923228, at *6 (E.D.N.Y. Feb. 15, 2022). But the Court is bound to evaluate the reasonableness of the Government's position "at the time it made its decision" to "take the position that it did." *$19,047.00 in U.S. Currency*, 95 F.3d at 251; *see also Pierce*, 487 U.S. at 561 (noting that this analysis is a "historical" inquiry: "not what the law now is, but what the Government was substantially justified in believing it to have been."); *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 620 (9th Cir. 2005) (requiring an "assessment of the reasonableness of the government's position *at the time of the litigation*" (emphasis in original)). Much of the split in authority relied on by the Government, though, developed after the Government detained Salazar Osuna pursuant to Section 1225 and defended its decision to do so in the instant action. On November 25, 2025, the date Salazar Osuna was detained, and on December 1, 2025, the date the Government filed its opposition, no court in this District, nor any Court of Appeals, had adopted

the Government's position.[2]  At that time, the landscape looked much different.  On November 26, 2025, for example, Judge Kaplan cataloged the nationwide landscape of federal district court cases grappling with this precise legal issue.  *See Barco Mercado*, 811 F. Supp. 3d at 506 (Appendices A and B).  By his count, the Government's assertion of mandatory detention authority over all noncitizens currently living in the United States, pursuant to Section 1225, had "been challenged in at least 362 cases in federal district courts."  *Id.* at 494.  Of those 362 cases, the Government's interpretation of Section 1225 had been rejected in "350 of those cases[,] decided by over 160 different judges sitting in about fifty different courts spread across the United States."  *Id.*  Perhaps most notably, the Government's interpretation had then been rejected, in a "string of losses," *Pierce*, 487 U.S. at 569, by all of the judges to consider the issue in this District.

If the Court were evaluating the reasonableness of the Government's position at the present point in time—with an extant circuit split and a more significant division among the district courts—the question would be a closer one.  But at the time the Government made the relevant decisions in this action, the "overwhelming majority" of courts—both in this District and nationwide—had rejected its position across hundreds of cases.  *Guzman Cardenas v. Almodovar*, 2025 WL 3215573, at *3 (S.D.N.Y. Nov. 18, 2025); *see Barco Mercado*, 811 F. Supp. 3d at 494.

---

[2] The first judge in this District to accept the Government's argument did so on December 4, 2025.  *See Chen v. Almodovar*, 815 F. Supp. 3d 314, 318–24 (S.D.N.Y. 2025).  Four other judges in this District have since agreed with the Government's position. *See Chen v. Almodovar*, 2026 WL 100761, at *1–4 (S.D.N.Y. Jan. 14, 2026); *Weng v. Genalo*, 2026 WL 194248, at *3–6 (S.D.N.Y. Jan. 25, 2026); *Arana v. Arteta*, 2026 WL 279786, at *3–5 (S.D.N.Y. Feb. 3, 2026); *Portilla Hernandez v. Noem*, 2026 WL 836735, at *3 (S.D.N.Y. Mar. 26, 2026).  Two Courts of Appeals have also adopted the Government's position, though they did so after the relevant time period. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026) (filed on February 6, 2026); *Avila v. Bondi*, 170 F.4th 1128, 1136–38 (8th Cir. 2026) (filed on March 25, 2026).  On April 28, 2026, the Second Circuit rejected the Government's position, *see Barbosa da Cunha v. Freden*, 175 F.4th 61, 96 (2d Cir. 2026), and on May 6, 2026, the Eleventh Circuit did the same. *See Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1285 (11th Cir. 2026).  The Sixth Circuit joined the Second and Eleventh Circuits on May 11, 2026. *See Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th Cir. 2026).

It is worth contrasting this state of play with that faced by many courts considering EAJA fee applications for appeals from Social Security Administration ("SSA") decisions in the wake of the Supreme Court's decision in *Lucia v. SEC*, 585 U.S. 237 (2018).  The *Lucia* court held that Administrative Law Judges ("ALJs") employed by the Securities and Exchange Commission ("SEC") were "Officers of the United States" and thus subject to the requirements of the Appointments Clause.  585 U.S. at 251.  After *Lucia* was decided, "a split in the Circuits emerged regarding whether a plaintiff could raise an Appointments Clause challenge in federal court without first raising it at the administrative level."  *Garner*, 2022 WL 22923228, at *3.  *Compare Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 159 (3d Cir. 2020) (no exhaustion requirement), *and Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537, 546–47 (6th Cir. 2020) (same), *with Carr v. Comm'r, SSA*, 961 F.3d 1267, 1274–75 (10th Cir. 2020) (exhaustion requirement), *and Davis v. Saul*, 963 F.3d 790, 793–95 (8th Cir. 2020) (same).  The Supreme Court would later resolve this split in *Carr v. Saul*, 593 U.S. 83, 95–96 (2021), holding that there is no "issue-exhaustion requirement" for Appointments Clause claims.

In the brief period of uncertainty between *Lucia* and *Carr*, though, courts nationwide were faced with the question of whether the SSA Commissioner's consistent litigation position—that an exhaustion requirement existed—was substantially justified.  "[D]istrict courts within the [C]ircuit were markedly split" on the question, though "the greater weight of authority favored" the Government's position, and the Second Circuit had not yet ruled on the issue.  *Dewonkiee L.B. v. Comm'r of Soc. Sec.*, 2021 WL 3417842, at *3 (N.D.N.Y. Aug. 5, 2021); *see Nelson S v. Saul*, 2021 WL 5768520, at *4 (D. Conn. Dec. 6, 2021) (collecting cases); *Bonilla-Bukhari v. Berryhill*, 357 F. Supp. 3d 341, 351 (S.D.N.Y. 2019) (noting that the "vast majority of courts that have considered this issue following *Lucia* . . . have concluded that exhaustion before the ALJ is required").  On

9

this record, "district courts throughout the country . . . almost unanimously found the Commissioner's position to have been substantially justified and denied a plaintiff's application for EAJA fees on that basis." *Garner*, 2022 WL 22923228, at *7; *see, e.g.*, *Garth D. v. Comm'r of Soc. Sec.*, 610 F. Supp. 3d 508, 514 (W.D.N.Y. 2022) (similar).

In the relevant period in the instant case, by contrast, the law was not "in . . . [a] considerable [state of] flux":  nearly every district court to consider the issue had rejected the Government's position, though no circuit court had yet weighed in.  *Nelson S*, 2021 WL 5768520, at *5.[3]  Thus, unlike the Government's post-*Lucia* position on administrative exhaustion for Appointments Clause claims, at the time it made the relevant pre-litigation and litigation decisions in this case, there was no circuit split on the relevant legal issue, and the clear weight of authority, both in this District and nationwide, cut against, rather than supported, its position.  In the face of this line of authority, the Court cannot conclude that the Government's continued maintenance of its litigation position was "justified to a degree that could satisfy a reasonable person."  *Pierce*, 487 U.S. at 565; *see Precision Concrete v. N.L.R.B.*, 362 F.3d 847, 852 (D.C. Cir. 2004) (concluding, in a different context, that an agency's action in defiance of "an

---

[3] Respondent points to one court in this Circuit which found the Government's position on this issue to be substantially justified through reference to the "minority of district courts . . . holding that a person not legally admitted remains a person 'seeking admission' despite years of residence." *Lopez v. Trump*, 816 F. Supp. 3d 492, 495 (D. Vt. 2026).  But in doing so, the *Lopez* court pointed to district court decisions issued months after the Government took the actions at issue in that case. *Compare id.* at 494 (noting that the petitioner was arrested on November 1, 2025, and that the court ordered a bond hearing held on November 17, 2025, resolving the case), *with id.* at 495 n.2 (collecting cases adopting the Government's position beginning in early December).  The Court thus respectfully disagrees with the disposition in *Lopez*: in November 2025, the overwhelming weight of authority rejected the Government's position. *See Barco Mercado*, 811 F. Supp. 3d at 506 (collecting cases).  Indeed, several other courts in this Circuit have awarded fees under the EAJA after finding that the Government did not demonstrate that its interpretation of Section 1225 was substantially justified. *See L.R.C. v. Maldonado*, 2026 WL 946787, at *2 (E.D.N.Y. Apr. 7, 2026); *K.B. v. Arteta*, 2026 WL 1533794, at *2 (S.D.N.Y. June 1, 2026); *Yao v. Almodovar*, 813 F. Supp. 3d 461, 478 (S.D.N.Y. 2025); *Patel v. Almodovar*, 2026 WL 1649635, at *2–3 (S.D.N.Y. June 8, 2026); *Barco Mercado*, 811 F. Supp. 3d at 506; *Gaspar v. Akshar*, 2026 WL 699369, at *9 (N.D.N.Y. Feb. 17, 2026); *Hassan v. Bondi*, 2026 WL 891602, at *6 (N.D.N.Y. Apr. 1, 2026).

unbroken line in authority" lacked substantial justification); *cf. Medina Tovar v. Zuchowski*, 41 F.4th 1085, 1091 (9th Cir. 2022) (concluding that "the government's position was not unreasonable" in part because "as many judges were persuaded by the government's position as were persuaded by Plaintiffs' position").

The Court is cognizant, however, of the Supreme Court's caution that "objective indicia," such as "the views of other courts on the merits," may not always provide a "conclusive answer" to the question of whether the Government's position was substantially justified. *Pierce*, 487 U.S. at 568–69. Though "a string of losses can be indicative," *id.* at 569, as other courts have observed, the focus of this inquiry should "remain[] on the merits and reasonableness of each argument, not a tallying of losses or wins." *Griffith*, 987 F.3d at 563 (discussing *Pierce*). Recognizing that some of my colleagues have disagreed, this Court is, respectfully, still of the view that the Government's position was not reasonably grounded in "text, structure, legislative history, and underlying policy" and was thus not substantially justified. *F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 598 (D.C. Cir. 1996).

For one, the Government's position was contradicted by statutory text and structure. As the Court observed in *Rivera Esperanza*, the Government's novel reading of Section 1225 "ignores the entirety of the text and violates a foundational principle of statutory interpretation: the rule against surplusage." *Rivera Esperanza*, 817 F. Supp. 3d at 195. The Government's position was also at odds with the available evidence of Congressional intent. As the Court noted in *Rivera Esperanza*, "there is no evidence that Congress intended for § 1226(a) to be so narrowly construed." *Id.* at 197. Indeed, the Government's interpretation of Section 1225 "would largely nullify a statute" Congress had enacted earlier that year: the Laken Riley Act. *Id.*; *see* Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025) (codified as amended at 8 U.S.C. § 1226(c)(1)(E)). Finally, as the

11

Court stated, "[t]he Government's position would expand § 1225(b) far beyond how it has been enforced historically," while "rendering § 1226(a) virtually obsolete." *Rivera Esperanza*, 817 F. Supp. 3d at 197. As the Second Circuit would later observe in *Barbosa da Cunha v. Freden*, the Government's interpretation represented a break from consistent executive practice spanning "five Presidential administrations over nearly three decades." 175 F.4th 61, 91–92 (2d Cir. 2026). "Under these circumstances, the fact that no President has ever found such power in the statute is strong evidence that it does not exist." *Id.* at 92; *accord Rivera Esperanza*, 817 F. Supp. 3d at 197.

Accordingly, the Court finds that the Government has not met its burden of establishing that reconsideration is necessary to "correct a clear error or prevent manifest injustice." *DiLaura*, 982 F.2d at 76.

### B. Special Circumstances

The Government also argues that an EAJA fee award is unwarranted because of the statute's exception for "special circumstances" which "make an award unjust." 28 U.S.C. § 2412(d)(1)(A). This provision is a "safety valve" which "helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts." *Oguachuba v. I.N.S.*, 706 F.2d 93, 98 (2d Cir. 1983) (quoting H.R. Rep. No. 96-1418, at 11 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 4953, 4984, 4990); *see Taylor v. United States*, 815 F.2d 249, 252 (3d Cir. 1987) (same). Under this exception, the EAJA "explicitly directs a court to apply traditional equitable principles in ruling upon an application for counsel fees by a prevailing party," *Oguachuba*, 706 F.2d at 98, though "the [special] circumstances of a case will infrequently justify a denial of an award." *Torres v. Barnhart*, 2007 WL 1810238, at *13 (S.D.N.Y. June 25, 2007). The Government bears the burden of establishing that these "special circumstances" exist. *Caplash v. Nielsen*, 294 F. Supp.

3d 123, 136 (W.D.N.Y. 2018).

The Court appreciates the Government's need to be able to advance new, credible interpretations of its statutory authority without being financially penalized for doing so. But the Second Circuit has also taken care to apply this exception in ways that "fulfill the purpose of [the] EAJA, which is to remove an obstacle to contesting unreasonable government action through litigation." *United States v. 27.09 Acres of Land*, 43 F.3d 769, 775 (2d Cir. 1994); *see Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 304 (2d Cir. 2011) (similar). And under this exception, new interpretations of the law advanced by the Government, even if "not yet commonly accepted," must nevertheless be "credible," *Russell v. Nat'l Mediation Bd.*, 775 F.2d 1284, 1290 (5th Cir. 1985), or "plausible." *Nken v. Holder*, 385 F. App'x 299, 303 (4th Cir. 2010) (per curiam); *see also Keasler v. United States*, 766 F.2d 1227, 1234 (8th Cir. 1985) ("That a case presents an issue of first impression in the forum does not ipso facto make the government's position in the litigation reasonable.").

For the reasons stated above, the Government has not met its burden of establishing that its new interpretation was sufficiently "credible," *Oguachuba*, 706 F.2d at 98, or "plausible," *Nken*, 385 F. App'x at 303, so as to invoke the special-circumstances exception for its novel interpretation of law. Nor would applying this exception to bar Salazar Osuna's fee application "fulfill the purpose of [the] EAJA." *27.09 Acres of Land*, 43 F.3d at 775. As the Supreme Court has noted, "[t]he Government's general interest," under the EAJA, "in protecting the federal fisc is subordinate to the specific statutory goals of encouraging private parties to vindicate their rights and curbing excessive regulation and the unreasonable exercise of Government authority." *Jean*, 496 U.S. at 164–65; *see Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991) ("The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified

governmental action."").  By the time Salazar Osuna was detained, the Government had already

had hundreds of opportunities to test the novel "extensions and interpretations" of the INA it used

to justify that detention—and had lost almost every time.  *Oguachuba*, 706 F.2d at 98; *see Barco*

*Mercado*, 811 F. Supp. 3d at 494.  The Court does not see, from an equitable perspective, how the

goals of the EAJA would be served by declining to award fees to attorneys who took on a case,

*pro bono*, to contest the detention of a habeas petitioner under a novel legal theory which, at that

time, had been so roundly rejected.  Accordingly, the Court finds that the special circumstances

exception does not bar Salazar Osuna's application for EAJA fees.

In sum, because the Court has determined that (i) Salazar Osuna is a prevailing party in a

civil action, (ii) the Government has failed to meet its burden to demonstrate that its position was

substantially justified, and (iii) the special circumstances exception does not apply, it finds that

Salazar Osuna is entitled to attorneys' fees under the EAJA.  *See* 28 U.S.C. § 2412.

## II.    Reasonable Fee Award

Cleary Gottlieb seeks a fee award in the amount of $26,999.62, based on an adjusted

statutory EAJA rate of $262.77 per hour for 102.75 hours of work.  Pet. Br. at 6–7. [4]  The

Government does not contest that the hourly rate sought by Petitioner's counsel is a reasonable

rate under the EAJA.  Gov. Opp'n at 17 n.2.  Instead, the Government argues that the number of

hours in the "fee demand should be severely reduced" due to what it claims are instances of (i)

excessive billing given the complexity of the case, (ii) overstaffing, and (iii) vague and block

---

[4] The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A).  A district court may thus "apply a cost of living adjustment to this ceiling, as measured by the Consumer Price Index [("CPI")]."  *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 194 (2d Cir. 2000).  Courts in this District applying this adjustment generally use the current CPI in the New York region for urban consumers, the "CPI-U," "for the month the attorney did the work and for March 1996."  *L.R.C.*, 2026 WL 946787, at *5.  Petitioner's counsel correctly calculated the adjusted rate for work performed in December 2025 as $262.77 per hour, which the Court finds to be a reasonable hourly rate here.  *See* Hou Decl. ¶ 15 & n.1.  As the firm notes, this rate is "significantly below" what is typically paid by its clients.  Pet. Br. at 6.

billing. Gov. Opp'n at 10–16. The Court finds that Petitioner's counsel has met its burden of demonstrating that the time it spent on this litigation was reasonable, and rejects the Government's argument that a reduction in fees is warranted.

"The EAJA provides for the award of 'reasonable' fees and expenses." *Servedio v. Comm'r of Soc. Sec.*, 2022 WL 3084335, at *1 (S.D.N.Y. Aug. 3, 2022); *see* 28 U.S.C. § 2412(d)(2)(A). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A district court has "broad discretion to determine the amount of time reasonably expended." *James v. Colvin*, 66 F. Supp. 3d 365, 367 (W.D.N.Y. 2014); *see Aston v. Sec'y of Health & Hum. Servs.*, 808 F.2d 9, 11 (2d Cir. 1986). Nevertheless, a district court should exclude hours that were not "reasonably expended," due to "overstaff[ing]" and the like, and should further consider "whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Hensley*, 461 U.S. at 434, 436. In doing so, the Court may "look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009); *see James*, 66 F. Supp. 3d at 367 ("In assessing reasonableness, the Court examines the circumstances surrounding the case, including whether it presented novel issues or law, or particularly complex facts."). Ultimately, "[t]he party seeking an award of fees has the burden of showing the reasonableness of the requested fees." *Vonaa v. Berryhill*, 2019 WL 2206066, at *1 (D. Conn. May 22, 2019).

The Court begins by briefly summarizing the role of Petitioner's counsel in the instant case. Although the petition was filed *pro se*, the Court subsequently issued an Order directing the Clerk of Court to attempt to locate *pro bono* counsel for Salazar Osuna. Dkt. 5. That same day, Victor

Hou, a partner of Cleary Gottlieb, and Andrew M. Darcy, Pro Bono Counsel, entered notices of appearance. *See* Dkt. 6; Dkt. 7; Dkt. 16 ("Hou Decl.") ¶¶ 17, 19.[5] Hou and Darcy were assisted on this matter by Ludivine Van der Hayden, who also works as Pro Bono Counsel, and Dina M. Rabinovitz, a second-year associate. Hou Decl. ¶¶ 18, 20. As the Cleary lawyers note, they "took on this case *pro bono*, without any expectation of payment, to ensure that Petitioner's . . . liberty interest" was protected. Dkt. 24 ("Pet. Repl.") at 8.

The Government submitted an abbreviated letter-brief in opposition to Salazar Osuna's uncounseled habeas petition that evening, stating, in relevant part:

> [W]hile the government respectfully disagrees with the Court's decision in *Rivera Esperanza*, the government acknowledges that the decision would control the result in this case if the Court adheres to that decision, as the facts of this case are materially indistinguishable from those of *Rivera Esperanza*—in that Petitioner was initially detained near or at the time he crossed the border into the United States, released, served with a NTA, and then subsequently detained after he appeared for a master calendar hearing. Thus, to conserve judicial resources and to expedite the Court's consideration of this case, the government hereby relies upon, and incorporates by reference, the legal arguments it presented in *Rivera Esperanza*, and the Court can decide this matter without further briefing. . . . If the Court determines that Petitioner's detention is governed by Section 1226(a), then Petitioner would be entitled to a bond hearing in immigration court for a determination whether he presents a danger to others or a flight risk. In that event, the government requests that the Court order a bond hearing be held, as opposed to ordering outright release.

Dkt. 8, at 3 (footnotes omitted). As the billing records show, the four attorneys began the engagement by spending a significant amount of time meeting with Salazar Osuna, conducting legal research, and drafting the first—and only—brief submitted by attorneys on his behalf, which was filed very shortly after Hou and Darcy appeared in this action. *See* Hou Decl., Appendix A. Hou also argued on behalf of Salazar Osuna at the hearing on the petition.

---

[5] The following facts are drawn from Salazar Osuna's fee application. As Petitioner's counsel notes, it "voluntarily exclude[d] all time spent by law clerks, paralegals, and support staff, despite a right to recover for these fees as well." Pet. Repl. at 7; *see* Pet. Br. at 6–7.

The Government's primary argument in support of a reduction in the fee awarded is that these lawyers worked an excessive number of hours given the complexity of this case, particularly in light of the fact that the Government had "conceded the material legal issue." Gov. Opp'n at 12. The Court has a different view of the work done by these lawyers, particularly when they agreed to handle this matter *pro bono* and on an expedited timeline. While it is true that the Government's concession that *Rivera Esperanza* controlled this case significantly streamlined its disposition, it was still necessary for Petitioner's counsel to familiarize themselves with and "develop[] legal arguments to address [the Government's] contentions" given the posture of that concession. Hou Decl. ¶ 12. These lawyers also researched two relevant, ancillary questions. *Id.* First, they researched the factual existence, if any, of any "prior criminal convictions or . . . pending charges" against Salazar Osuna, which would have been one ground on which to distinguish the instant case from *Rivera Esperanza* and relevant to a bond hearing, were the Court to have ordered one to be held. *Id.* Second, they conducted research on the futility of ordering that the Government hold a bond hearing for Salazar Osuna. *Id.* The Government had requested, in its brief in opposition to Salazar Osuna's habeas petition, that "[i]f the Court determines that Petitioner's detention is governed by Section 1226(a), . . . the Court order a bond hearing be held, as opposed to ordering outright release." Dkt. 8, at 3. Benefiting from this work and counsel's effective advocacy, the Court granted the relief requested by Salazar Osuna—his immediate release from custody—following the December 3rd hearing. Pet. at 18; *see* Dkt. 12.

In short, at the time Cleary Gottlieb was appointed as *pro bono* counsel, several live factual and legal issues existed that required resolution on an extremely expedited timeline. In view of the "circumstances surrounding the case," *James*, 66 F. Supp. 3d at 367, including that they agreed to take on the case *pro bono*, and quickly and effectively prepared for a hearing to defend

17

Petitioner's liberty interest, the Court concludes that the hours worked by Cleary attorneys were "reasonable in relation to the success achieved." *Hensley*, 461 U.S. at 436.

The Court also rejects the Government's argument that the firm's billing records demonstrate impermissible overstaffing or block billing. A district court "has discretion to reduce requested attorneys' fees where the prevailing party assigned an inordinate number of attorneys to litigate the action." *Houston v. Cotter*, 234 F. Supp. 3d 392, 404 (E.D.N.Y. 2017); *see, e.g.*, *Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d Cir. 1997) (similar). It is true, as other courts in this Circuit have noted, that "similar habeas petitions are routinely litigated in this [D]istrict by single attorneys." *L.R.C. v. Maldonado*, 2026 WL 946787, at *4 (E.D.N.Y. Apr. 7, 2026). But the circumstances of this case militate against a finding of overstaffing. Shortly after appearing in this action, and on an accelerated timeline, the attorneys (1) met with their detained client (for the first time), (2) researched and drafted the only counseled brief, (3) prepared for oral argument and a possible bail hearing, and (4) effectively represented Salazar Osuna at the hearing on the petition. *See* Hou Decl. ¶¶ 9–13. In context, the billing records of the firm's attorneys do not show the kind of "duplication of effort" which has led courts to reduce fee awards. *Patterson v. Comm'r of Soc. Sec.*, 2021 WL 4125013, at *3 (S.D.N.Y. Sept. 9, 2021); *see, e.g.*, *Houston*, 234 F. Supp. 3d at 404–06 (collecting cases).

Further, the Second Circuit has made clear that, although "block billing is not preferred," the practice "is permissible so long as the records allow the court to conduct a meaningful review of the hours requested." *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017). Here, "for the most part, the block-billed entries . . . contain sufficient detail and specificity so as to afford reasonable confidence that the time billed was productively spent." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 343 (S.D.N.Y. 2016). In the Court's view,

18

"this is not a case in which the billing records are so voluminous that it would be difficult for the court to parse the block-billed entries individually to determine to what extent the time was reasonably billed." *Raja v. Burns*, 43 F.4th 80, 89 (2d Cir. 2022).  The billing entries are "sufficiently descriptive," in the context of Cleary's limited *pro bono* engagement to represent Salazar Osuna on his habeas petition, to discern whether they were reasonable under the circumstances of this case. *Harty v. Par Builders, Inc.*, 2016 WL 616397, at *4 (S.D.N.Y. Feb. 16, 2016).  Accordingly, there is no need to apply an "across-the-board cut" to the claimed hours because of the firm's billing practices. *Raja*, 43 F.4th at 90.

For these reasons, the Court finds that Salazar Osuna's lawyers have met their burden to show that their fee application seeks reimbursement for a reasonable number of hours worked. Given the reasonable EAJA rate of $262.77 per hour, the Court finds that Cleary Gottlieb is entitled to $26,999.62 in fees.

## CONCLUSION

For these reasons, Salazar Osuna's motion for attorneys' fees under the EAJA is granted. Petitioner's counsel is awarded $26,999.62 in attorneys' fees.[6]  The Clerk of Court is respectfully requested to terminate the motion pending at Docket Number 15.

SO ORDERED.

Dated:          July 1, 2026
                New York, New York

_____
Ronnie Abrams
United States District Judge

---

[6] Salazar Osuna has executed an affidavit "assign[ing] payment of any award of fees and costs directly to [his] attorneys." Dkt. 17 ("Salazar Osuna Aff.") ¶ 6.